## DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 7487.   Decided November 7, 1908.]

HERBERT HIPKINS, *Appellant*, v. J. H. ESTES *et al.*,
*Defendants and Respondents*, EDWARD MILLER
CORNICE & ROOFING COMPANY *et al.*,
*Interveners and Respondents.*[1]

EXECUTORS AND ADMINISTRATORS—SALE TO PAY DEBTS—FRAUD—
HUSBAND AND WIFE—COMMUNITY PROPERTY—PURCHASE BY WIFE OF
ADMINISTRATOR—FRAUDULENT CONVEYANCES—EVIDENCE—SUFFICIENCY.
There is no evidence of fraud warranting the setting aside of an
administrator's sale to his wife of lands of the estate to pay a mort-
gage, alleged to have been purchased by the wife with community
funds of herself and husband, where it appears that part of the
estate was covered by a mortgage for $1,575, that the mortgage was
purchased by the administrator's wife, one of the heirs, with money
given to her by her husband for that purpose, and that she bid in
the mortgaged property and also the balance of the estate on a de-
ficiency judgment; it appearing that she paid more than the mort-
gage was worth, the face of which exceeded the value of the entire
property; and the fact that the land afterward became valuable,
and was deeded by the wife to satisfy a subsequent debt of the hus-
band would not establish fraud or that the same was not her sep-
arate property.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered December 24, 1907, upon findings
in favor of the defendants, after a trial before the court with-
out a jury, in an action to enforce a trust in lands.   Affirmed.

[1]Reported in 97 Pac. 1089.

*Ralph Woods* (*Loveday, Kelley & McMillan*, of counsel), for appellant.

*T. W. Hammond*, for respondents.

*E. R. York*, for interveners.

DUNBAR, J.—William Hipkins died intestate on the 26th day of April, 1901, at Tacoma, leaving as heirs at law Rosalia Estes, May Hipkins, Kate Hipkins, Nellie Hipkins, and Herbert Hipkins, all of whom were of age, with the exception of Herbert Hipkins who was then about seventeen years old. His estate consisted of lots 1, 2, 9, 10 and 11, in section 4, township 19, north, range 2, east, W. M., containing about about one hundred and sixty acres of land. There were substantially no debts, except a mortgage to one Frederick Meyer on lots 1, 2 and 11, of said tract, containing about ninety acres, amounting altogether with accumulated interest to $1,575. On the 7th day of June, 1901, the respondent John H. Estes, husband of the respondent Rosalia Estes, was appointed administrator of the estate of the decedent, upon petition of all the heirs aforesaid.

In August, 1901, Rosalia Estes purchased of Frederick Meyer a mortgage upon part of the estate of the said decedent, paying therefor the sum of $1,200, which sum was furnished her by John H. Estes, as a gift. On the 7th day of November, 1901, Rosalia Estes, as the purchaser of said mortgage, brought her petition in the probate proceedings, praying that the administrator be required to redeem that portion of the property covered by the mortgage, failing which, that an order be made that the property be sold for the purpose of satisfying the mortgage; to which petition John H. Estes, as administrator, made answer on the 11th day of November, 1901, that there was no personal estate or personal property in decedent's estate, and that it was impossible to redeem said mortgage. Thereafter, on the 19th day of November, 1901, an order for the sale of the mortgaged property was made, and the same was sold in due course on the

16th day of December, 1901, to Rosalia Estes, the petitioner and wife of the administrator, for the sum of $700, she being the only bidder at the sale. Subsequently this sale was confirmed.

On February 15, 1902, John H. Estes, as administrator, filed a petition setting forth that there was outstanding a claim of $875.95, the same being a deficiency on a mortgage held by Rosalia Estes after the sale of the mortgaged premises, claim for which had been presented and allowed by the administrator and by the court; and praying that the court would make an order to sell the whole of the real estate or such portion thereof as might be necessary to provide funds for the payment of the debts of the estate and the expenses of administration. Upon the same date an order to show cause was made to all persons interested in the estate. Proof of service was duly made. Subsequently, on March 25th, the court made an order that all the real estate be sold at public auction for cash, and on April 21, 1902, Richard W. Jamieson was appointed guardian *ad litem* of the appellant Herbert Hipkins, to show cause, if any, why such sale should not be had. On April 23d, the guardian *ad litem* made answer, and reported that he had examined the records of the case and informed himself concerning the sale and the expediency thereof and the necessity therefor, and found that such sale was necessary, and that no injustice would be done to the minor by such sale. On May 29th, the administrator reported that on May 19th he had sold the property at public auction, and that the highest and only bid he had received was from Rosalia Estes, for the sum of $875, and on May 29th, the court made an order confirming the sale to Rosalia Estes. On August 22, 1902, the administrator filed his final report, and prayed that it be accepted as his final account. On September 20, 1902, J. L. Murray was appointed guardian *ad litem* for Herbert Hipkins, and on October 9, 1902, reported that he had examined the report and account of the administrator and found

the same to be correct and true, and that the same should be allowed and settled, which was done.

Thereafter John H. Estes became involved in a government contract, as a result of which he became insolvent, and the intervener, Edward Miller Cornice & Roofing Company and R. A. Gove, as sureties upon his bond under the contract, were obliged to and did pay about $27,740, and thereafter took judgment against Estes in that amount. Thereafter Rosalia Estes conveyed to Edward Miller Cornice & Roofing Company all of the lands in question except ten acres, the consideration being the satisfaction of the value of the judgment held by her garnishees against her husband John H. Estes. During the time that the lands in question were in possession of Rosalia Estes, timber to the amount of some fifteen hundred cords was sold therefrom, for about $500.

Thereafter the plaintiff brought his bill to charge upon the property so taken by John H. Estes and Rosalia Estes a trust in his favor to the amount of his interest, and for damages for waste so far as the same affected his interest, and for other and further relief. After trial upon the merits, the court below refused to grant the prayer of the bill, and gave judgment against the plaintiff, from which judgment plaintiff appeals.

It is urged by the appellant, that a fraud was perpetrated upon the estate by collusion between J. H. and Rosalia Estes; that the money which was furnished to Rosalia Estes with which to purchase the property was not a bona fide gift, but was in reality at that time and remained the community property. of J. H. Estes and wife; that the rest of the heirs were not aware of the fact that Rosalia Estes had purchased the mortgage of Meyer for less than its face value, and that at least constructive fraud was perpetrated upon the estate and upon this appellant. Conceding, for the purpose of this decision, the correctness of all the propositions of law urged by appellant, we are still of the opinion that the judgment is justified by the testimony, for the evidence does not bring the actions of the respondents within the inhibition of the law

as urged by counsel. Whatever may be the legal inability of
the administrator to purchase the real estate of lands which
he is administering, and however wholesome the policy of the
law which forbids it, are questions which are not involved in
this case, for lawsuits must be determined on evidence, and
there is no testimony of any kind tending to prove that the
administrator was the purchaser of any of the lands of this
estate.

All the testimony that was offered was that of the defend-
ants Mr. and Mrs. Estes, which was to the effect that the
purchase was made by Mrs. Estes. It is true that they both
candidly said that the money with which it was purchased
was given by Mr. Estes to his wife in response to her indicat-
ing a desire to purchase the old home for a future home for
her mother, who had expressed a wish to again live there with
her minor son, this appellant. It might be that in some juris-
dictions this money would still be construed the money of the
husband, or at least of the community, but such a rule can-
not prevail in this state where a married woman has a right
to own, purchase, or sell land as her separate property. The
intimate relations existing would, it is true, warrant close
scrutiny into the transaction to determine if any fraud or
collusion had been perpetrated upon the estate, but such
scrutiny in this case does not disclose any wrongful intention
or act. The record shows that all the proceedings leading
up to and including the sale of the land were regular, and that
such sale was recommended by appellant's guardian *ad litem*,
and the testimony of such guardian *ad litem* was to the effect
that he examined the record and based his report upon it.

Appellant places great stress upon the statement that the
mortgage was bought by Mrs. Estes for less than its face
value, but there is nothing suspicious about this circumstance,
for the testimony shows that, through her desire to obtain the
place as a future home for her mother, she gave much more
for the mortgage than the land was worth; the testimony of
the mortgagee being to that effect, viz., that he knocked the

interest off because he wanted to get rid of the mortgage, and that he did not think the whole one hundred and sixty acres was worth the amount of his mortgage. A stranger would undoubtedly have had a legal right to have petitioned for a sale of the remainder of the land, or so much as was necessary, to satisfy his legal claim against the estate; and there is no legal barrier to one of the heirs of the estate who is a creditor invoking the same remedy.

Without reviewing in detail the testimony of the appellant's witnesses in relation to the promises made by Rosalia Estes, it was too vague, uncertain and contradictory to be convincing. All that it did establish was that certain promises had been made after the settlement of the estate, mere gratuitous promises entirely without consideration, matters over which courts are without jurisdiction, and amenable only to the forum of conscience. It is true that this land, which at the time of its purchase by Mrs. Estes was comparatively worthless, by the projection of railroads in that vicinity and the vicissitudes of business generally, became so valuable that Mrs. Estes was enabled with one hundred and fifty acres of said land to relieve her husband of a very large obligation. But this debt was incurred years after the purchase of the land by her, the undisputed testimony being that at the time her husband was solvent and owed no debts; and there is nothing in the fact that she was willing to use it for that purpose that militates against the idea that it was her separate property. When asked what induced her to give her property in payment of her husband's debt she replied: "I suppose my own interest that I would have in him, and wanting him to be free from debt. It was my own free will—more than glad to do it." It seems to us that her action in this respect, instead of indicating a desire to defraud any one, exhibited a commendable wifely trait, which it is to be hoped is not so rare as to provoke adverse criticism or create a suspicion of fraud.

It not being claimed that there was any error in the proceedings, the appellant's case must rest entirely upon as-

sumption of fraud, and there being no testimony upon which fraud can be predicated, the judgment will be affirmed.

MOUNT, ROOT, RUDKIN, and FULLERTON, JJ., concur.

HADLEY, C. J., and CROW, J., took no part.