304 LEWIS v. HILL.

[No. 8945.  Department One.  December 21, 1910.]

WILLIAM H. LEWIS, *as Executor, etc., Respondent,* v.
WILLIAM CURTIS HILL *et al., Appellants.*[1]

EXECUTORS AND ADMINISTRATORS—TRUSTS—PURCHASE BY TRUSTEE
—SALE—SETTING ASIDE—ACQUIESCENCE.  The act of an executor and
trustee, in permitting his wife to acquire, at a discount, claims of
creditors of the estate, to pay for property sold to creditors pursuant
to a plan to satisfy claims and save the estate from insolvency, can-
not be objected to by residuary legatees of the *cestui que* trust, the
widow of the deceased, who for four years prior to her death ac-
quiesced in the proceeding with full knowledge of all the facts,
while she and all such purchasers profited greatly by the increased
value of the property taken by them; since the sale to the trustee's
wife was not absolutely void, but only voidable.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered May 9, 1910, in favor of the
plaintiff, discharging an executor and trustee from the obli-
gations of his trust, and denying relief to cross-complainants
for an accounting, after a hearing before the court.  Affirmed.

*Philip Tindall* and *Thomas C. Bradley,* for appellants.

*Harold Preston* and *Leander T. Turner,* for respondent.

PARKER, J.—This suit was instituted by the plaintiff, for
the purpose of obtaining a decree of the superior court for
King county, settling his account as executor and trustee
under the last will and testament of Alice S. Hill, deceased,
and discharging him from the obligations of that trust.  The
issues here involved arise upon the cross-complaint of William
Curtis Hill and James Marshall Hill, sons of Alice S. Hill,
deceased, wherein they allege certain acts of the plaintiff to
have been unlawful and fraudulent, resulting in loss to Alice S.
Hill and her estate.  These acts, which we will notice later, all
occurred during the lifetime of Alice S. Hill, while the plain-
tiff was administrator of the estate of William C. Hill, the

[1]Reported in 112 Pac. 373.

deceased husband of Alice S. Hill. Most of the acts complained of occurred in the administration of that estate, while others occurred in personal dealings between the plaintiff and Alice S. Hill. The substance of the complaint is that the plaintiff has withheld from the estate of Alice S. Hill certain property, or rather the proceeds thereof, acquired by him and his wife during the lifetime of Alice S. Hill, which she and her estate became equitably entitled to. It is this property that the cross-complainants seek to have the plaintiff account for, as a part of his trust under the will of Alice S. Hill, deceased. At the conclusion of the evidence in behalf of the cross-complainants, the trial court, upon motion of counsel for the plaintiff, dismissed the cross-complaint and denied the relief prayed for, upon the ground that the evidence was not sufficient to support the claims made against the plaintiff by the cross-complainants. From this disposition of their claims, William Curtis Hill and James Marshall Hill, have appealed to this court.

William Curtis Hill, the husband of Alice S. Hill, died in the year 1890, leaving property in the state of Washington. He left a will making his widow, Alice S. Hill, his sole devisee, but failed to mention any of his children therein, and for that reason the will was declared void by this court as to the children. *Hill v. Hill,* 7 Wash. 409, 35 Pac. 360. Mrs. Hill continued to administer her deceased husband's estate until June, 1895, when she resigned and the respondent, William H. Lewis, was appointed administrator in her place, by the superior court for King county. The administration of that estate was brought to a close on February 1, 1904, when, by the usual court proceedings, final settlement and distribution was decreed, and an order entered discharging respondent as administrator. Thereafter, on August 9, 1904, Alice S. Hill died at Washington, D. C., where she had been living for some years previous, leaving property in the state of Washington. She left a will, giving certain specific property to each of her children, and giving the residue, being by far the larger part

of her property, to the respondent William H. Lewis, in trust for her children, and naming him as executor of her will. We are not here concerned with the detailed provisions of this trust nor with the execution of those provisions, since no question is raised relative thereto. The controversy here involved has to do with matters occurring before the death of Alice S. Hill, and presents the question of whether or not respondent has brought into this trust estate all of the property which in equity belongs there. Learned counsel for appellants, in their brief, state the theory upon which they are proceeding as follows:

"The estate of Alice S. Hill may, for the purposes of this suit, be regarded as the successor of the estate of her husband, William C. Hill, deceased. The theory upon which the cross-plaintiff William Curtis Hill and the intervener James Marshall Hill have raised the issues involved in this appeal is that plaintiff while administrator of the estate of William C. Hill, deceased, wrongfully appropriated to his wife property and funds belonging to that estate, and that he defrauded their mother of property and of the proceeds of other property which belonged to her as the beneficiary of that estate. The relief sought is the restoration to Mrs. Hill's estate of that property and of the proceeds of such as has been sold."

At the time of the death of William C. Hill in 1890, he and Alice S. Hill had eight children; the two sons who are these appellants; a daughter, Elizabeth, who afterwards became the wife of respondent; and five other daughters. As these children became of age, all except the youngest daughter deeded to their mother, Alice S. Hill, their interest in their father's estate; and the youngest daughter becoming of age after the mother's death, deeded to respondent her interest in her father's estate, in compliance with a provision in the will of the mother, as a condition to that daughter receiving certain benefits under that will. Therefore, since these appellants are claiming rights against respondent only as residuary legatees under their mother's will, we are to deal with this controversy as if it was being waged between their mother,

Alice S. Hill, and respondent, and as if no one but Alice S. Hill and the creditors of the estate of her husband, William C. Hill, had any interest whatever in that estate at the time of the doing of the things by respondent which are complained of by appellants. This brings us to a consideration of those acts and the question of the alleged violation of Mrs. Hill's rights thereby.

In the course of the administration of the estate of William C. Hill by respondent as administrator, the title to a considerable portion of the property thereof passed to Elizabeth Hill Lewis, the wife of respondent. The greater portion of the property so passing to Mrs. Lewis, was taken in trust for her mother, Alice S. Hill, and the remainder of it was taken in her own right. The latter is the source of this controversy, and the story of its bringing about is, in substance, as follows: From the time of the appointment of respondent as administrator of the estate of William C. Hill in 1895 until the fall of 1899, that estate was embarrassed by the importunities of creditors, and was in a condition bordering upon insolvency. The total of the estate's obligations was near the amount of the appraised value of its property. In 1899 the estate was indebted upon claims of creditors and for taxes as follows:

Alice S. Hill (Preferred claim)............................$18,487.29
Alice S. Hill.............................................. 25,332.55
Schwabacher Brothers......................................  8,450.00
John Thomas...............................................  5,920.00
William Knight............................................  5,472.00
John Leasure..............................................  5,472.00
J. H. Parsons.............................................  1,720.00
Taxes; the larger part of which were delinquent for several
   years past and to which statutory penalties and interest
   had attached; but if paid before November 1, 1899, there-
   by saving the remitted penalties and reduced interest
   under the special act of 1899 (Law of 1899, p. 339)
   amounted to........................................... 27,923.22
                                                          ──────────
   Total..................................................$98,777.06

There was also due upon attorney's and administrator's fees sufficient to make the total indebtedness of the estate approximately $100,000. The administrator had made repeated efforts since his appointment in 1895 to sell property

of the estate to raise funds to pay its indebtedness, but had been unable to do so. The time had arrived when something must be done towards the liquidation of the indebtedness to prevent insolvency overtaking the estate. The special act of the legislature of 1899, remitting penalties and reducing interest upon delinquent taxes if paid before November 1, 1899, furnished an additional incentive to act in the matter before that time, for it was estimated that over $11,000 could be saved in the item of taxes if paid before that time, and the estate could not pay them except through a sale of its property. This, of course, could be effected by payment direct by the estate from the proceeds of a sale, or by the purchasers at such sale paying them, making the amount of their bids accordingly. In either event the reduction would work to the benefit of the estate if a sale could be consummated in time to pay the taxes before November 1, 1899.

Prompted by these considerations, in the summer of 1899 tentative arrangements were made with all the creditors, including Alice S. Hill, to sell to them property of the estate, at its appraised value, sufficient in amount to satisfy each of their claims. To accomplish the payment of the claims in this manner, it was, of course, absolutely necessary that all of the creditors should agree to such an arrangement. Otherwise such a sale would not have the effect of a cash sale, and the possibility of some of the creditors being unlawfully preferred would not be avoided. It was accordingly planned— Mrs. Hill and all of the creditors joining therein, no one else having any interest whatever in the estate so far as concerns this inquiry, as we have already noticed—that an order of sale of the property of the estate for the payment of the debts of the estate should be obtained from the court by the usual proceedings, and at the sale to be made in pursuance thereof there should be bid in by or in behalf of each creditor a sufficient amount of the property, at its appraised value, to satisfy their respective claims, thus giving the sale the effect of a cash sale. Up to a very short time before the

consummation of the sale, with the first day of November close at hand, it was supposed that all of the creditors would abide by this arrangement and bid for property to the amount of their respective claims; but Thomas, Knight and Leasure finally declined to bid and satisfy their claims in this manner. Thereupon, in order to proceed with the arrangement, respondent purchased for his wife, Elizabeth Hill Lewis, these claims, and she bid in at the sale sufficient property, at its appraised value in her own right, to satisfy these claims, as there was bid in, by or in behalf of all other creditors, sufficient property to satisfy their respective claims. There was paid to Thomas, Knight and Leasure for their claims, approximately only forty per cent of their face value. This, and the use of the claims at face value to purchase the property, constitutes the principal acts of alleged wrong on the part of respondent.

It is quite evident from this record that if Thomas, Knight and Leasure had proceeded with the original arrangement and bid in property in satisfaction of their claims, as was done by or in behalf of the other creditors, instead of selling their claims to Mrs. Lewis and she taking their place, this controversy would never have been heard of. It appears that Knight, Thomas and Leasure were finally unwilling to take property for their claims, in view of its uncertain value, its then lack of marketableness, and the burden or raising sufficient cash to pay the taxes prior to November 1. These were the risks and burdens assumed by Mrs. Lewis and for which she was compensated by the discount in the purchase of the claims. In after years she profited considerably by the increase of the value of this property, and this is the principal thing that appellants seek to compel respondent, her husband, to account for; basing their contention upon the theory that the purchase of the claims of Knight, Thomas and Leasure in this manner was in law a fraudulent speculation by the respondent as administrator in claims against the estate, and that all profits flowing from such dealing became in

equity the property of the estate. We do not propose to discuss the technical legal duties devolving upon an administrator relative to the purchase of claims against the estate he is administering, or relative to his purchasing property of the estate; neither do we propose to discuss the somewhat uncertain question, in the light of this record, of whether or not the purchase of these claims rendered them in law the property of the community, consisting of respondent and his wife, or her separate property. If the latter resulted, it would seem that the decision of this court in *Hipkins v. Estes*, 51 Wash. 1, 97 Pac. 1089, would put an end to appellants' contentions.

The evidence in this case warrants the conclusion that Alice S. Hill, whom we have seen was the only person interested in the estate besides the creditors at the time of the doing of the acts complained of, with full knowledge of all the material facts relating to those acts, acquiesced in and sanctioned them, and profited materially by the liquidation of the debts of the estate brought about in this manner we have narrated. The learned trial court, viewing the evidence in this light, reached the conclusion that Alice S. Hill was not in a position to complain of the acts of respondent, and that these appellants, of course, had no higher right. It was upon this theory that appellants cross-complaint was dismissed. The question of the knowledge and acquiescence of Alice S. Hill is only one of fact. Upon this question we deem it sufficient to say that the evidence convinces us, as it evidently did the learned trial court, of the truth of the following: Alice S. Hill knew, before the sale of the Thomas, Knight and Leasure claims to Mrs. Lewis, that those claims could be purchased at a discount. She had an opportunity to buy them herself if she desired. She learned by correspondence from respondent very soon after the sale, if she did not know of it before, that Mrs. Lewis had purchased these claims and bid in property as other creditors did in satisfaction thereof. She may not have then known the exact amount Mrs. Lewis paid for the claims,

but must have known that they were bought at considerable less than their face value. She knew of the urgent necessity of some one buying these claims who would participate in the consummation of the proposed plan of the sale. She learned early in January, 1900, within three months after the sale, by correspondence from respondent, if she did not already know it, that it was expected that Mrs. Lewis would profit by the purchase of these claims and the taking of property of the estate in settlement of them. Alice S. Hill appears to have been quite well informed of, and had rather decided notions as to the value of the various tracts of land belonging to the estate. Her claims had been all assigned to Mrs. Lewis prior to the sale, which accounts for Mrs. Lewis bidding in and taking a large amount of the property in trust for her mother. Alice S. Hill was informed by letter from respondent very soon after the sale as to what particular tracts of the property had been bid in for her, and what had been bid in by the other creditors; and later, when the details had been more fully worked out, she was informed by letter with greater particularity.

Although learned counsel for appellants strenuously argue to the contrary, we are convinced from the evidence that respondent took great pains to keep Alice S. Hill fully and fairly informed as to all facts she was entitled to know touching the purchase of these claims for Mrs. Lewis, and the liquidation of the same with all other claims by the sale of the estate's property. She lived for more than four years after these things occurred, continuing friendly business relations with respondent, during which period she repeatedly evidenced her satisfaction with his conduct in bringing about the liquidation of the debts of her deceased husband's estate, and in his administration of that estate. During this period the increase of value in real property in the state of Washington resulted in large profits to all creditors who had taken property of the estate in settlement of their claims. She shared in this profit, and of course knew that her daughter,

Mrs. Lewis, shared in it in the same proportion upon the property she had acquired. During all this time there does not appear the slightest intimation from Alice S. Hill that she or her husband's estate was entitled to any of the property thus acquired by Mrs. Lewis. In the meantime the estate of William C. Hill was brought to a final settlement in the spring of 1904, some months before the death of Alice S. Hill. We will pass, however, the question of the binding force of that settlement upon her, since but little is made of it by counsel for either party. Upon the matter of Mrs. Hill's capabilities, we adopt the language of the learned trial judge in disposing of appellants' claims, which we think the evidence fully warrants, as follows: "It appears . . . . that during the time of those transactions which are the basis of this controversy that Mrs. Hill was an exceedingly bright, intelligent and capable woman."

With these facts before us, the law of the case seems a simple matter. We have seen that, for the purpose of this inquiry, Alice S. Hill will be regarded as the only person with any right whatever to object to the acquisition by her daughter, Elizabeth Hill Lewis, of the property of the estate in the settlement of the Thomas, Knight and Leasure claims. Alice S. Hill is, in effect, the sole *cestui que trust;* and when her rights are not invaded, no one can complain. Such, reduced to its simplest terms, are the limits of this inquiry. Assuming now that Mrs. Lewis' acquisition of this property was for the community and not as her separate property, and that therefore the matter must be dealt with as if respondent was acquiring an interest in it, we think the principle of law controlling the rights of the parties may be stated in the language of Chief Justice Fuller, speaking for the supreme court of the United States in *Hammond v. Hopkins,* 143 U. S. 224, 251, as follows:

"Undoubtedly the doctrine is established that a trustee cannot purchase or deal in the trust property for his own benefit or on his own behalf, directly or indirectly. But such a pur-

chase is not absolutely void. It is only voidable, and as it may be confirmed by the parties interested, directly, so it may be by long acquiescence or the absence of an election to avoid the conveyance within a reasonable time after the facts come to the knowledge of the *cestui que trust*."

See, also, *Brown v. Cowell*, 116 Mass. 461, 465; *Miggett's Appeal*, 109 Pa. St. 520; *Butterfield v. Cowing*, 112 N. Y. 486, 20 N. E. 369; *Ungrich v. Ungrich*, 131 App. Div. 24, 115 N. Y. Supp. 413, 417.

We are of the opinion that Alice S. Hill acquiesced in the acts of respondent, and that whatever might be said as to those acts being technically unlawful, as against those who had a right to complain, they are not such acts as she had the right to complain of at the time of her death, and hence these appellants, who claim only as her devisees, have no better right.

The other things complained of by appellants occurred in connection with personal dealings between respondent and Alice S. Hill. They consist of alleged inducements made by respondent, resulting in the transfer of certain of her property to him for inadequate consideration. These contentions we regard wholly without merit. A review of them in detail would disclose a condition of affairs somewhat like that which we have reviewed above, so far as her knowledge of conditions surrounding them is concerned. The evidence, we think, clearly shows that in these transactions she knew what she was doing, got all the consideration she agreed for, and that to a considerable extent they were transactions of her own suggestion.

Some question is made upon the admissibility of certain testimony brought out upon cross-examination of respondent by his attorney while upon the stand as a witness for appellants. This testimony related to conversations between respondent and Mrs. Hill during her lifetime, and for that reason was objected to by appellants' counsel. We will not attempt to solve this question, since we are of the opinion that the other evidence consisting, among other things, of a vast

amount of correspondence passing between respondent and Mrs. Hill concerning the matters involved, fully warrant the conclusion reached by the learned trial court.

We are of the opinion that the dismissal of appellants' cross-complaint should be affirmed. It is so ordered.

RUDKIN, C. J., MOUNT, FULLERTON, and GOSE, JJ., concur.