UNGRICH v. UNGRICH et al.

(Supreme Court, Appellate Division, First Department.  December 30, 1910.)

1. APPEAL AND ERROR (§ 1213*)—REVERSAL—PROCEEDINGS IN LOWER COURT—
FINDINGS OF FACT—CONSTRUCTION.

On a second trial of a case after a reversal, the court ruled on certain proposed findings of fact, and requested additional findings, and in one additional finding recited "that in making these findings of fact this court has followed the decision of the Appellate Division on the former appeal herein as to the weight of evidence as to all questions of fact which were before the Appellate Division in this case in favor of the defendants. Found as to modification at request of defendant's attorney." *Held*, that the court did not intend by such findings to certify upon the record that he had made the findings in obedience to what seemed to be the views of the Appellate Division as to the facts, and had not passed upon the questions of fact in accordance with his convictions on the evidence, but that he merely intended to say at the request of defendant's attorney that his views conformed to the views expressed by the Appellate Division on the former appeal as to the weight of the evidence on all questions of fact which were reviewed by such court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1213.*]

2. TRUSTS (§ 237*)—MANAGEMENT OF TRUST ESTATE—PURCHASE BY TRUSTEE—
VALIDITY.

Where a cestui que trust, though understanding his rights, and with knowledge of all the material facts, induced his brother, the trustee, to purchase the trust premises, and formally approved such purchase and ratified and confirmed it both then and later, he is estopped to complain of the trustee's act, as a breach of the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 262; Dec. Dig. § 237.*]

3. TRUSTS (§ 198*)—MANAGEMENT OF TRUST PROPERTY—PURCHASE BY TRUSTEE
—VALIDITY.

The purchase of trust property by one of the trustees is not void, but voidable only.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 261; Dec. Dig. § 198.*]

4. TRUSTS (§ 298*)—ACCOUNTING—JURISDICTION.

The proper forum to determine whether a testamentary trustee has properly managed personal estate in his hands, the proceeds of the sale of land, is in the Surrogate's Court on an accounting by the trustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 417; Dec. Dig. § 298.*]

Appeal from Special Term, New York County.

Action by Martin L. Ungrich against Henry Ungrich, Jr., and others.  Judgment of dismissal, and plaintiff appeals.  Affirmed.

See, also, 125 N. Y. Supp. 1148.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

L. Laflin Kellogg (Macintosh Kellogg, on the brief), for appellant.
Edward W. S. Johnston, for respondents.

LAUGHLIN, J.  On a former trial of this action, the plaintiff recovered a judgment substantially for the relief demanded in the complaint; but on appeal to this court it was reversed.  131 App. Div.

24, 115 N. Y. Supp. 413. The former record · presented, and this court in the opinion, in which all of the sitting justices concurred, considered the questions presented by this appeal, with one exception. It appears by the record now before the court that, after the trial justice had ruled on 42 proposed findings of fact and 9 proposed conclusions of law at the request of the attorneys for the plaintiff, he ruled on 35 proposed findings of fact described as "Plaintiff's Additional Requests to Find." These proposed requests, with the exception of being designated additional findings, were in the form of original requests to find by the attorneys for the plaintiff. With respect to the thirty-fifth proposed additional finding, the record shows the following:

"Thirty-Fifth. That in making these findings of fact this court has followed the decision of the Appellate Division on the former appeal herein as to the weight of evidence as to all questions of fact which were before the Appellate Division in this case in favor of the defendants. Found as to modification at request of defendant's attorney."

Following the memorandum with respect to the modification of the request are the initials of the trial justice and the abbreviation of his official title. It is contended on the part of the respondent, and I think the fair inference is, that the trial justice modified the thirty-fifth proposed additional finding at the instance of the attorneys for the defendants and found it in the modified form. If it had been a proper finding of fact, it would have been the duty of the trial justice to rule on it as proposed without modification; but no question with respect to that point is presented, for the record does not contain the proposed finding in its original form, and there was no exception to its not having been found as presented. The learned counsel for the appellant contends that this finding shows that the trial justice did not exercise his judgment on the questions of fact independently of the views of this court, and that it indicates that he was constrained by the decision of this court on the former appeal to make the other findings to which this refers. In no aspect of the case was it a proper request to find, because requests to find should be proposed findings of fact with respect to the evidence in the case and not with respect to the operation of the mind or official action of the trial justice. It may, however, be regarded as a certificate by the trial justice, and, viewed in that light, it remains to be seen what is its legal purport. If it requires the construction that the trial justice has made these findings in obedience or deference to what he deemed to be the views of this court with respect to the facts, and did not give the parties the benefit of his own judgment in making the findings of fact, then doubtless the effect of such action would be the same as a mistrial, and it would be necessary to send the case back with directions to the trial justice to consider the evidence and make a decision thereon in accordance with law. We are of opinion, however, that the learned trial justice did not intend by this finding to certify upon the record that he had not passed upon the questions of fact in accordance with his convictions on the evidence, but at· the request of the attorney for the defendant he merely intended to say that his views conformed to the views expressed by this court on the former

appeal herein as to the weight of the evidence on all questions of fact which were reviewed by this court.

On the questions which were considered by this court on the former appeal, we have examined the evidence which was presented more fully on this trial; but we do not find that the change in the record is sufficient to render inapplicable thereto the rules of law which we applied on the former appeal in reversing the judgment.

The testator, Henry Ungrich, died on the 1st day of March, 1901, leaving two sons, the plaintiff and the defendant Henry Ungrich, Jr., his only surviving children. He left a last will and testament, and therein appointed his son Henry and his nephew, Martin Ungrich, the defendants, executors and trustees. After directing the payment of his debts and funeral expenses, he gave, devised, and bequeathed unto his executors all his estate, real and personal and mixed, in trust to take possession of, manage, and conduct the same, and to collect the rents, issues, and income thereof until the division of his estate as therein directed, and out of such income to pay taxes, assessments, and other legal charges, with express directions:

"To sell and convert my entire estate into cash, as soon after my decease as my executors, hereinafter named, and the survivors of them deem best, in such manner and upon such terms, as my executors think proper."

He then directed the executors to set apart out of the proceeds of his estate the sum of $5,000 for the use of his granddaughter, with directions to give her the principal on her attaining the age of 21 years, and provided that in the event of her death before that time the legacy should lapse and become part of his residuary estate. The next direction to the executors was "to divide the balance of my estate, into two equal one-half parts, and to pay over to my son, Henry Ungrich, one of such parts, which equal undivided one-half part I hereby give, devise and bequeath to my said son, Henry Ungrich, to him, his heirs and assigns forever," and he directed his executors to hold the remaining equal undivided one-half part of the balance of his estate, "and keep the same invested and reinvested, and to pay over to my son, Martin Louis Ungrich, in quarter-yearly payments, during his natural life, the net income received from the investment of such one-half of my estate." He further directed that, until the sale and division of his estate as herein stated, the net income from the estate be equally divided between his two sons. He further devised the one-half part of the balance of his estate, the income of which was to be given to the plaintiff during life, to his son Henry on the death of the plaintiff, and, in the event of Henry's death without issue prior to that time, he devises the same over. In the clause appointing the executors and trustees he again conferred upon them full power to sell or to lease any or all of his real estate, and to dispose of his personal estate "when in their sound discretion it will be for the best interests and benefit of my estate so to do." He executed a codicil, by which he revoked the bequest to his granddaughter, but otherwise the provisions of the will were not changed.

On the 22d day of May, 1902, the trustees conveyed the real estate to one Davenport, an employé of their attorneys, who, pursuant to a prior understanding, conveyed the same to the defendant Henry Ungrich, who was one of the trustees, and to whom, as has been seen, an undivided one-half interest therein was in effect devised and the remainder in the other undivided one-half subject to the payment of the income of that half to the plaintiff for life. This action was commenced on the 6th day of December, 1906, to require the defendants to account for the estate of the testator which came into their hands and for the proceeds received by the defendant Henry Ungrich on a sale of the real estate by him as assets of the estate impressed with a trust in favor of the plaintiff to the extent of his interest under the will, and for the removal of the executors and trustees.

-- It clearly appears by the evidence, and has been found by the trial court, that the defendant Henry Ungrich purchased the property at the request of the plaintiff; that the plaintiff was informed that a trustee could not purchase from himself, but notwithstanding this plaintiff insisted that he only was interested, and since he desired it no one else could complain; that both the defendants and the attorney took particular pains to impress upon the plaintiff that a purchase by one of the executors and trustees was not proper in such case, and the precaution was taken to suggest the appraisal of the property by an appraiser selected by the attorney and another chosen by each party, in which the plaintiff acquiesced. The attorney for the trustees, who had been counsel for the testator, with the knowledge and acquiescence of the plaintiff, employed a reputable, well-known, and disinterested real estate auctioneer and broker who was known to plaintiff to appraise the real estate, and his appraisal was $152,000. The defendant Henry Ungrich also employed an appraiser, who appraised the value of the property at $148,000. The plaintiff consulted a friend in the real estate business concerning the value of the property, but did not appoint an appraiser. He expressed satisfaction with the appraisal made at the instance of the attorney, which was in writing, giving a separate valuation on each parcel, and was examined by him. The plaintiff had for nearly a year been desirous of having the real estate sold or of having his annual income definitely fixed. The other trustee on the 9th day of May, 1902, added $5,000 to the higher appraisal as the selling price of the property. The defendants were unwilling to sell the property at public auction, deeming it an inopportune time, for the reason that real estate values were then low. The defendant Henry Ungrich was willing and anxious to purchase one of the parcels, but the plaintiff was desirous of having it all sold, and the other trustee took the position that it should all be disposed of at the same time and together. On the 16th day of May, 1902, the defendant Henry Ungrich announced his willingness to purchase all the property at the valuation of $157,000, and a formal contract was thereupon drawn for a sale of the premises to Davenport. When the contract was prepared, the attorney asked the plaintiff whether it was satisfactory to him, and he stated that it was, and thereupon

at the suggestion of the attorney he signed an approval on each of the contracts, as follows, "Contract approved by me," followed by his signature, and on one of the duplicate contracts he copied the words of approval. On the 22d day of the same month, the trustees conveyed to Davenport, and on the same day he conveyed to the defendant Henry Ungrich. On the last-named day, the plaintiff executed, under his hand and seal, and duly acknowledged, an indenture in writing reciting the trust for his benefit and the conveyance of the premises by the trustees, and that the conveyance was made at his request and with his consent and approval, and with full knowledge that the real estate was purchased by, and was to be conveyed to, his brother, who was one of the executors and trustees, and he therein ratified and confirmed the acts of the executors in so conveying the property. The consideration paid was the fair market value of the property at that time, and no deception was practiced on the plaintiff.

It appears that the defendant Henry Ungrich received from his father in 1897 certain assignments of mortgages upon which there was due $25,000. After the death of the testator, the plaintiff complained to his brother Henry with respect to these assignments, and it was thereafter agreed that Henry should give him $6,000. This was done on the 23d day of June, 1902, and the plaintiff then executed a general release to the defendant Henry Ungrich, and in it specified any claim which he had with respect to the assignments of said mortgages. On or about the 1st day of March, 1902, on due notice to the plaintiff, the defendants duly accounted to that date as executors in the Surrogate's Court in the county of New York, and on the 25th day of September, 1902, their accounts were judicially settled and allowed as filed and adjusted. On the 2d day of March, 1903, the executors and trustees filed in the office of the clerk of the Surrogate's Court an account of their proceedings from the 1st day of March, 1902, until the 1st day of March, 1903, setting forth therein the former accounting and the amount with which they were therein charged. The plaintiff likewise had due notice of this second accounting. In their accounts on the second accounting, the defendants charged themselves with the sum of $166,725.96, and schedule A of their accounts shows that $157,000 of this was the proceeds of the sale of the real estate. The accounts also showed that they had paid to the defendant Henry Ungrich the sum of $78,500, being one half of the proceeds of the sale of the real estate, and that they had accounted to the plaintiff for the income of the other half of such proceeds and held the principal as trustees for him. On the 13th day of May, 1903, by decree of the Surrogate's Court, the accounts of the executors and trustees were judicially settled, and it was therein adjudged and decreed that they held the sum of $78,984.07 subject to the terms and provisions of the will. On the 24th day of April, 1903, the plaintiff and his wife executed quitclaim deeds of the premises to the defendant Henry Ungrich, and the plaintiff at that time was aware of the fact that the purpose for which those deeds were required was to remove any question that there might be

as to the title of the defendant Henry Ungrich on account of his being a trustee, and he was informed that a question with respect thereto had been raised by a purchaser of one of the parcels. The plaintiff, without protest, received from the defendants his annual income based on the proceeds of the sale of the real estate in accordance with the agreement by which the sale was made after the purchase of the real property by the defendant Henry Ungrich. The plaintiff, who was an architect, rendered professional services to his brother with respect to one of the parcels and recovered a judgment therefor.

The evidence clearly shows that the plaintiff fully understood his rights, and that he knew all of the material facts, and not only induced his brother to purchase the premises, but, as already stated, he formally approved such purchase and ratified and confirmed it, both at the time and subsequently. The case falls clearly within the principle laid down by this court on the former appeal herein that a competent beneficiary, who induces a breach of the trust on the part of his trustee and ratifies it, is estopped from thereafter complaining of such breach, and within the doctrine of Woodbridge v. Bockes, 59 App. Div. 503, 69 N. Y. Supp. 417, affirmed 170 N. Y. 596, 63 N. E. 362.

Moreover, since the former appeal herein, this court held, in Weintraub v. Siegel, 133 App. Div. 677, 118 N. Y. Supp. 261, construing the will in question, that there was an equitable conversion of the real estate into personalty under the will, and that the accountings in the Surrogate's Court, as herein stated, were binding and conclusive on all parties in interest, and that the title derived from a conveyance by the defendant Henry Ungrich, who was one of the trustees, was marketable. A purchaser of trust property by one of the trustees is not void, but voidable only, and since they not only had the power to sell, but it was their duty to do so and to account for the proceeds in the Surrogate's Court, the objection should have been made there on the accounting, and if it had been they could have been compelled to account for the full value of the property if they did not sell it for full value, and, having acquiesced in the accounting, plaintiff cannot now in disregard of the accounting compel the defendants to account to him for profit realized by the defendant Henry Ungrich on a subsequent fortunate advantageous sale of one of the parcels at a large profit. Weintraub v. Siegel, supra, and authorities therein cited; Ungrich v. Ungrich, supra; Corley v. McElmeel, 149 N. Y. 228, 43 N. E. 628; Lockman v. Reilly, 95 N. Y. 64; Gerard on Titles to Real Property (5th Ed.) 298.

It follows, therefore, that the judgment should be affirmed, with costs.

INGRAHAM, P. J., and McLAUGHLIN and MILLER, JJ., concur.

DOWLING, J. I concur in the affirmance of this judgment upon the ground last stated, namely, that the accountings in the Surrogate's Court were binding and conclusive on all parties in interest, and that plaintiff cannot maintain this action while the decree of that court remains operative.