[No. 29237.    Department One.    May 15, 1944.]

MAUDE F. RYAN, *Appellant,* v. FRED B. PLATH *et al.,*
*Respondents.*[1]

[1]Reported in 148 P. (2d) 946.

*D. V. Morthland* and *Lane Morthland,* for appellant.

*Velikanje & Velikanje,* for respondents.

JEFFERS, J.—This cause is before us at this time on the appeal of Maude F. Ryan from a judgment made and entered on November 3, 1943. In order that an understanding of the events leading up to the entry of this judgment may be had, it will be necessary to refer briefly to the original action, the details of which will be found in *Ryan v. Plath,* 18 Wn. (2d) 839, 140 P. (2d) 968.

Maude F. Ryan, a sister by adoption of Delbert J. Foster, deceased, instituted the original action in the superior court for Yakima county, against Fred B. Plath, the administrator of the Delbert Foster estate, and Washington Fruit & Produce Company, of which Plath was president and general manager and owner of fifty-eight per cent of its stock. The action generally involved a purported sale of certain property of the Foster estate made by Plath, as administrator, to the corporation. The purpose of the action was to establish a constructive trust, and to compel restitution of the property by the produce company, the constructive trustee, and to obtain an accounting by Plath and the trustee for the period they had, respectively, held, managed, and operated the property.

At the conclusion of the first hearing, which was sometime in June, 1942, the trial court rendered an oral opinion declaring that the purchase of the property by Washington Fruit & Produce Company created a constructive trust of the property for the benefit of the Foster estate and the heirs, and ordered an accounting to be made by Plath and the corporation from December 28, 1936, until the time of trial. In July, 1942, Plath and the corporation, who will be hereinafter referred to as respondents, filed an account, to which Mrs. Ryan, to whom we shall hereinafter refer as appellant, filed exceptions. A hearing was had on this

account. The court thereafter, on October 21, 1942, made and entered its findings of fact, conclusions of law, and judgment. In this judgment, the court, among other things, decreed that appellant, upon payment into the registry of the court within ninety days from and after September 23, 1942, of the specified sum of $21,635.80, was entitled to possession of the real estate and personal property involved in the judgment.

It may be here stated that, while appellant in the original action desired an accounting for the 1942 fruit crop, the trial court refused to require such an accounting at that time.

After the trial court had orally announced its decision that the corporation was a constructive trustee of the property, and on July 28, 1942, appellant served on respondents a written demand that the trustee sell the 1942 fruit crop for cash in the open market and account for the disposition of same. In this demand appellant set out what she claimed was the then market price of pears and peaches, and stated that she would demand that respondents secure at least the prices named by her for such fruit. She further demanded that the apple crop be sold for cash on the open market without incurring any expense for *warehousing, washing, sorting, packing, storage, or selling.*

On December 10, 1942, appellant served a further demand upon respondents for a statement of the 1942 crop production and disposition.

On December 14, 1942, respondents complied with appellant's request and furnished a statement of the peaches and pears sold, and of the apples packed out and credit therefor given to the Foster ranch, the statement also showing the apples yet to be packed out and the price which would be paid for them when packed out. This statement was given to counsel for appellant, and no objection to this account was made by him.

During all this time the constructive trustee was in charge of the orchard. Appellant had not deposited in the registry of the court the sum required of her, nor had she filed

any supersedeas bond, although the amount of such bond had been fixed.

On August 25, 1943, this court affirmed the judgment of the trial court, as modified. The modification consisted in deducting from the sum of $21,635.80, which the trial court had required appellant to deposit to entitle her to possession of the premises, the sum of $4,765.17, allowed by the trial court as part of the production costs of the 1942 crop.

· After the remittitur went down, and on September 23, 1943, appellant served notice on respondents that she had deposited in court the sum of $18,410.28, being the full amount required of her to be paid, as determined by this court, and at the same time appellant demanded from respondents a conveyance of the real estate and personal property, also demanding an accounting for the 1942 crop.

On September 29, 1943, respondents deposited in court a statutory quitclaim deed to the real property and a bill of sale to the personal property, not including the 1942 crop.

On November 3, 1943, the trial court in the proceeding now before us, which involved only the apple crop of 1942, after a hearing on the account rendered by respondents, which account is shown by exhibit 66 in evidence, made and entered its findings of fact, conclusions of law, and judgment, wherein it was decreed that appellant have judgment against respondents for the sum of $2,727.63, together with interest thereon at six per cent per annum from the date of the judgment until paid. The decree expressly provided that respondents' account, as shown by exhibit 66, was approved.

On November 4, 1943, respondents deposited in court the sum of $2,803.74, being the amount of the above judgment, interest, and costs, and notified appellant of such deposit. On the same day, as appears by an entry in the execution docket, the clerk of the court satisfied the judgment. It is admitted, however, that appellant never asked for or received the amount paid in to satisfy the judgment.

On November 12, 1943, appellant gave notice of appeal from the judgment of November 3rd, and it is with this appeal we are now concerned.

■ At the outset we are met with a motion by respondents to dismiss the appeal, for the reason that the questions now before the court are moot. This contention is based upon the fact that the judgment rendered against respondents on November 3, 1943, was a money judgment; that respondents have paid into the registry of the court a sufficient sum to satisfy that judgment; and that the clerk of the court, in accordance with the provisions of Rem. Rev. Stat., § 454 [P. C. § 8110-16], has satisfied the judgment on the execution docket.

The judgment was not satisfied at the request of appellant, nor has she demanded or received any of the money deposited by respondents. Had appellant demanded and received the money deposited, as was done in the case of *Maxham v. Berne,* 88 Wash. 158, 152 Pac. 673, a different question would be presented.

We are of the opinion that, while under § 454, *supra,* the lien of the judgment was discharged by the payment into court by respondents of the amount of the judgment as then rendered, such payment did not, under the admitted facts, affect appellant's right to appeal from the judgment. *The motion to dismiss is denied.*

■ The principal issue in this case is based upon assignment of error No. 1, which is that the court erred in holding that the constructive trustee could buy the 1942 apple crop from themselves at the market price at the beginning of the harvest season, without the consent of appellant.

The general rule is stated in 65 C. J., "Trusts," p. 768, § 642, as follows:

"One of the most familiar doctrines of the law of trusts is that a trustee cannot purchase from himself or at his own sale. The law does not stop to inquire into the fairness of the sale or the adequacy of price, but stamps its disapproval upon a transaction which creates a conflict between the self-interest and integrity of the trustee."

However, the above rule is not an absolute one, and if such a sale is made it is not absolutely void, but merely voidable at the option of the *cestui que trust.* We have so stated in *Lewis v. Hill,* 61 Wash. 304, 112 Pac. 373, wherein

we quoted from *Hammond v. Hopkins*, 143 U. S. 224, 251, 36 L. Ed. 134, 12 S. Ct. 418, as follows:

" 'Undoubtedly the doctrine is established that a trustee cannot purchase or deal in the trust property for his own benefit or on his own behalf, directly or indirectly. But such a purchase is not absolutely void. It is only voidable, and as it may be confirmed by the parties interested, directly, so it may be by long acquiescence or the absence of an election to avoid the conveyance within a reasonable time after the facts come to the knowledge of the *cestui que trust.*' "

Bogert, Trusts and Trustees, vol. 3, p. 1516, § 484, states the rule as follows:

"The doctrine is sometimes stated to be that 'a trustee cannot purchase at his own sale,' or that 'a sale by a trustee to himself is void.' What is really meant, however, is that such a sale is subject to attack by the cestui. If the cestui desires to let the sale stand, he may do so, and the title of the purchasing trustee will be unexceptionable."

26 R. C. L., 1330, § 193:

"While the courts are not entirely in accord on the question the great weight of authority is to the effect that a purchase by a trustee, or in his interest, is not necessarily or absolutely void. It cannot be attacked and overthrown by third persons. Neither can the heirs or other parties in interest treat it as unqualifiedly void. They may confirm it either directly or by their nonaction continued for a long period of time after having notice of the true nature of the transaction. Such purchase is not void to the extent that the trustee does not take title which he can convey to a third person, nor has the trustee a right to treat it as void; it is binding upon him until the cestui que trust chooses to avoid it. Perhaps the best statement of the rule is that the sale will become good unless the cestui que trust elects to avoid it before its ratification may be presumed from the lapse of time or other sufficient circumstances."

Pomeroy's Equity Jurisprudence (5th ed.), vol. 3, p. 799, § 957, states that such transactions are voidable at the suit of the beneficiary, and not merely presumptively or *prima facie* invalid. See, also, § 958, *id.* To the same effect are *Ungrich v. Ungrich*, 141 App. Div. 485, 126 N. Y. Supp. 419; *Marcum v. Wallace*, 246 Ky. 726, 56 S. W. (2d) 5; *Schockett*

*v. Tublin,* 170 Md. 117, 183 Atl. 521; *Hoyt v. Latham,* 143 U. S. 553, 36 L. Ed. 259, 12 S. Ct. 568.

The rule that the *cestui que trust* may avoid sales by the trustee to himself has its exceptions. Thus, in *In re Bauer's Trust,* 17 Cal. App. (2d) 426, 62 P. (2d) 150, it is stated:

"When the beneficiary, having capacity to contract, with the full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so,"

the beneficiary may not avoid the sale.

26 R. C. L., 1330, § 194, states the exception in the following language:

"If a cestui que trust, with full knowledge of a purchase by or in the interest of his trustee, and of his right to disaffirm it, elects to ratify such purchase, he is irrevocably concluded by such ratification, and the sale is thereafter not subject to successful assault at law or in equity. The cestui que trust may, upon notice of all the facts, ratify and affirm the sale by his acquiescence or silent approval. Where a trustee buys for himself and there is actual fraud, or the cestuis que trust are ignorant of the facts, the law is tolerant of delay on their part; but where the cestuis que trust have notice of the facts, they should not delay action in setting aside the sale for the purpose of seeing whether it is likely to prove a profitable speculation. And an unreasonable delay in taking the necessary steps to set aside a sale by a trustee to himself will imply an election to treat the sale as valid, and a confirmation of it may be justly inferred after the lapse of eight or ten years."

Section 195, *id.*:

"Where a trustee has purchased trust property at a sale thereof the cestui que trust may insist, as a matter of right, upon having the sale set aside and having the experiment of another sale, or may have the property held under the original trust, if, within a reasonable time, he chooses to say that he is not satisfied with the sale. But while the law makes the sale voidable at the election of the cestui que trust, it demands prompt action on his part in disaffirming it, and if he does not make his election to disaffirm the sale within a reasonable time, he will be precluded, and the title will rest absolutely in the trustee."

This principle is sustained by the following authorities: Restatement of the Law of Trusts, §§ 216-218; *Lewis v. Hill, supra; Dodge v. Dodge,* 102 F. (2d) 703; *Ungrich v. Ungrich, supra; Marcum v. Wallace, supra; Hoyt v. Latham, supra; Warren v. Pazolt,* 203 Mass. 328, 89 N. E. 381.

The above rules represent the almost universal weight of authority.

■ We think it is also true that each case must be controlled by its own facts.

In *Shockett v. Tublin, supra,* the court, after stating that sales by executors and administrators to themselves of property which they hold in trust for others are voidable, goes on to say:

"Without in any manner deviating from the unbending rule controlling transactions between fiduciaries and their *cestuis que trustent,* it may be stated as a general principle that each transaction depends upon the peculiar circumstances connected therewith."

■ As has been stated, this cause is before us on the accounting of the trustee for the 1942 crops raised on the Foster ranch. Appellant, in her notice of July 28, 1942, directed the trustee when to sell and at what prices. The trustee complied with the demand in all respects, except that, instead of selling to some third person on the open market, it purchased the fruit for itself, crediting the Foster ranch with either the specific price demanded by appellant or the highest market price where market price was demanded, as of the date when such fruit (in this case the apples) were usually purchased where they were not to be warehoused, washed, sorted, packed, etc.; in other words, at harvest time. The trial court found:

"The defendants were at all times trustees for the benefit of the plaintiff and as such were bound to follow the directions and dictates of the plaintiff, this being an equity action the plaintiff is now estopped from claiming an accounting different than a sale at the going market price, the evidence showing that the price credited by the defendants was as high as, or higher than, the going market price of said items during the market season."

Appellant makes no contention as to any of the expenses incurred in connection with the crop, and assents to the sale to the trustee of all except the apple crop. After the harvest season, the time at which respondents were instructed to sell, there was a sharp rise in the apple market. By avoiding the sale of the apples to the trustee, appellant will make a considerably larger profit than she did obtain as the result of what she claims to be a breach of trust.

Appellant states that she would have, or could have, no objection if the prices for apples with which she was credited had resulted from a sale on the open market to a third party, and, as stated, she makes no objection to the sale to the trustee of the other fruit, peaches and pears, which were a part of the 1942 crop.

As we view the situation here presented, the disposition of the 1942 crop, under the demand of July 28, 1942, was one continuous transaction. By her failure to object to the disposition of the peaches and pears, and in failing to object to the expenses incurred in producing all the crops, including the apples, appellant in effect has approved the trustee's method of handling the crop. While it does not appear affirmatively in the record, it is difficult to believe that appellant did not know the manner in which the crop was being handled by respondents and that it was being handled in the same manner as former crops.

Since appellant's directions were carefully carried out, in so far as the time of sale and price were concerned, we are of the opinion that, under the facts in this case, and in so far as this particular matter is concerned, respondents should be treated the same as a third-party purchaser.

It does not appear from the record that any fraud was perpetrated upon appellant, or that appellant could or would have received more from the apples had they been sold on the open market to a third person at the time she demanded that they be sold. In other words, she received all that her demand asked for, in so far as price was concerned.

In this connection, we desire to call attention to the case of *Stutzman v. Barnhart,* 318 Pa. 285, 178 Atl. 673. In the cited case, one Barnhart, who the court held was a trustee, became the purchaser of a one-half interest in certain lots belonging to the trust estate. The main objector to the transaction apparently was William Stutzman, who was one of three shareholders in a corporation for which a receiver had been appointed. By agreement the receivership was terminated, and Robert C. Hoerle and Barnhart were authorized to sell the lots belonging to the corporation, and account for the proceeds. Mr. Hoerle died after the sale to Barnhart. When the latter made his account, Stutzman objected to the sale to Barnhart. The facts are not too fully set out, but the findings of fact show that at the time of the sale all parties except Stutzman knew of it, and the other trustee, Hoerle, approved of it. The opinion states: "The evidence is that the purchase was made at a price for which the land was listed for sale to anybody else." The court approved the account, including the sale to Barnhart, although it was held that Barnhart was not entitled to one-half the commission for making the sale. All the court said with respect to a possible ratification by Stutzman was that he learned of the sale soon after it was made, and *apparently* acquiesced.

In our opinion, appellant in the instant case should not be allowed to ratify this transaction in part and avoid it in part. What appellant is in effect attempting to do in this proceeding is to accept the benefits of the transaction in so far as all the crops, except the apples, are concerned, and is claiming a technical breach of trust in so far as the sale of the apples is concerned. As to the apples, she is attempting to claim the benefit of a price subsequent to the marketing date, and one which could be, or was, obtained only after the fruit was warehoused, washed, sorted, and packed, operations which she specifically stated in her demand of July 28th she did not desire to have incurred.

We are of the opinion that, under the facts of this case

and the law applicable thereto, appellant cannot avoid this sale.

■ Appellant also assigns error on the allowance of one hundred dollars per month to the trustee for services performed from October 21, 1942, the date of the original decree, to January 1, 1943. The allowance of compensation for services rendered by a trustee rests within the discretion of the court, and this is true even where there is a breach of trust. Bogert, Trusts & Trustees, vol. 4, pp. 2860-2861, § 976; *Monroe v. Winn,* 16 Wn. (2d) 497, 133 P. (2d) 952; *East & West Coast Service Corp. v. Papahagis,* 344 Pa. 183, 25 A. (2d) 339.

In view of the fact that the only evidence offered as to the value of the trustee's services was that of respondents, we cannot say that the trial court abused its discretion in allowing one hundred dollars per month.

■ Error is also assigned on the allowance of interest only from the date of the judgment in the court below, November 3, 1943, rather than from December 14, 1942. Interest is allowable on liquidated claims, and on unliquidated claims when the amount thereof can be ascertained by mere computation. *Lloyd v. American Can Co.,* 128 Wash. 298, 222 Pac. 876. The claim in this case was not liquidated until the date of the judgment, as certain items in the account were controverted by appellant.

While it is undoubtedly the general rule that, in an action for an accounting, interest will be allowed from the date of the last item (*Hartman Shoe Co. v. Hanson,* 135 Wash. 512, 238 Pac. 17), this court stated in *Royal Dairy Products Co. v. Spokane Dairy Products Co.,* 129 Wash. 424, 225 Pac. 412:

"There was, therefore, no error in allowing interest from the date of the last item claimed by respondent, *since there was no controversion of the items of account by appellant.*" (Italics ours.)

Here, as we have stated, certain items of the account were controverted, and the claim could not have been, and was not, liquidated until proof was taken and the account ap-

proved by the trial court. We are of the opinion the trial court was right in allowing interest only from the date of the judgment.

The judgment of the lower court is affirmed.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.

[1]Reported in 148 P. (2d) 957.