## Kovalcik v. G. C. Murphy Co.

*Paul Barna, Jr.,* of *Barna & Barna,* for plaintiffs.

*Robert D. Beck,* of *Patrono, Geisler, Edwards & Pettit,* for defendant.

GLADDEN, J., April 30, 1971.—This case reaches us on the preliminary objection of defendant in the nature of a demurrer, which claims the running of the statute of limitations.

On May 22, 1967, plaintiff-wife fell on the sidewalk

in front of defendant's place of business located at 630 McKean Avenue, Donora, Pa. On May 15, 1969, a praecipe for writ of summons in trespass was filed with the prothonotary by plaintiffs and issued to the sheriff where it was docketed. Subsequently, on January 25, 1971, the summons was reissued and served together with a complaint in trespass upon defendant at its place of business located on Main Street in Washington, Pa.

Defendant objects to the service as being beyond the two-year statute of limitations and alleges that no good reason existed to excuse plaintiffs for delaying the service.

We are asked to dismiss the complaint.

Defendant cites as authority for its request the case of Amati v. Campbell decided by our court and reported at 51 Wash. 1 (1970). In that case, a praecipe for summons was filed but written across its face was the instruction, "Please do not serve." Our court held in that case that the phrase, "Please do not serve," rendered void the original summons, so that the statute of limitations continues to run.

It is not alleged that any such phrase appears on the praecipe for summons in the within case. There is no question that here the summons was, in fact, issued by the prothonotary to the sheriff where it was docketed. Plaintiffs paid the docket fees to the sheriff but issued no affirmative instructions to have the summons served. It is defendant's contention that the failure of plaintiffs to instruct the sheriff to serve the summons was tantamount to a "hold" order and, therefore, the two-year statute of limitations continued to run and was not tolled.

We see an obvious distinction in the Amati case and the matter before us. A "Please do not serve" order was never given to the prothonotary in this

case. This court in Amati (DiSalle, J., dissenting) considered such instructions to nullify the praecipe, just as if it had never been filed at all. In the instant case, however, the summons was issued to the sheriff, which action carried it one step beyond the situation in Amati.

Pennsylvania Rule of Civil Procedure 1007 provides that the action is commenced, inter alia, by praecipe for writ of summons. The commencement of the action tolls the statute of limitations. See Goodrich-Amram comments 1007-3. If the praecipe is a nullity because of the deliberate act of plaintiff in the manner of a "hold" order, the statute of limitations is not tolled. Absent such a deliberate act, then we regard the summons as having tolled the statute of limitations.

So long as the summons is reissued and served with a complaint within two years from the date it was filed, the service is good.

Defendant has cited the case of Peterson v. Philadelphia Suburban Transportation Co., 435 Pa. 232 (1969), as stating the law on this question. We do not disagree here with the Peterson decision, but we are of the opinion that the factual situation there is so dissimilar to the matter now under consideration that Peterson has no application. We do, however, quote from that decision certain dicta which we believe is pertinent. Justice Pomeroy, at page 242, writes:

"Plaintiffs here could have caused the reissuance of the writ at any time until September 9, 1966 two years from the filing of the original praecipe."

We believe that this dictum in the Peterson case is a correct statement of the law of Pennsylvania.

We, therefore, hold that the action against the within defendant was commenced when the unrestricted praecipe for writ of summons was filed with

the prothonotary on May 15, 1969, and that the statute of limitations was tolled for a period of two years from that date. Since plaintiffs have caused the summons to reissue and have caused it to be served, together with their complaint, within the two-year period computed from May 15, 1969, we find that there has been good service and would dismiss the preliminary objections.

Before making an order to accomplish that dismissal, however, we shall pass briefly on plaintiffs' argument that the defense of statute of limitations has been improperly raised by preliminary objections. Plaintiffs claim that such a defense should be set forth as new matter in defendant's answer. This would give plaintiffs an opportunity to answer the defense raised in the new matter. We have read the case of Goldstein v. Stadler, 417 Pa. 589, and concluded that the filing of preliminary objections in this case raising the defense of statute of limitations is improper. See also Sorgini v. Porter, 48 D. & C.2d 305 (1970).

Since we have disposed of the question of whether or not the statute of limitations was tolled, we see no reason to allow defendant additional time in which to plead new matter raising this defense. To do so would invite the parties to the next session of argument court to argue that which has already been decided.

Based on the above, we now enter the following

## ORDER

And now, April 30, 1971, the preliminary objections filed by defendant are dismissed. Defendant shall have 20 days in which to file an answer.

## CONCURRING OPINION

SWEET, P. J., April 30, 1971.—Rule 1007 (Goodrich-Amram) provides that an action may be "com-

menced" by filing with the prothonotary a praecipe for a writ of summons. Coerced by the brevity of this, I am obliged to concur in the foregoing. However, since that rule was drafted, there have been developments in the law and in our society which seem to me to make imperative a reconsideration of the implications of rule 1007.

In the instant case, the accident took place on May 22, 1967. On May 15, 1969, 103 weeks later, a praecipe for writ of summons was docketed and the writ issued to the sheriff. However, plaintiff gave no instructions to the sheriff and the thing lay in flaccid inanition in the sheriff's office. Finally, on January 25, 1971, 44 months after the accident, the summons was reissued and served together with a complaint in trespass upon defendant. It seems to me that this sort of thing effectively subverts the statute of limitations. I submit that a defendant should know in two years after an episode of personal injury whether or not he has been sued. Consider some of the implications of the result we have reached today.

Suppose that an accident takes place on January 5, 1971. On January 4, 1973, plaintiff can file a praecipe for a writ of summons. It goes routinely to the sheriff's office where he neglects it until the 4th of January 1975. On the proposition that such a writ has residual life for two years, he can wait until January 3, 1977, reissue it and get it served then. Defendant will find out six years minus four days after the accident that he has been sued. Unless he is going to pay someone to scan the docket periodically, defendant will have no knowledge that he has been sued until he is served with the first process. The whole idea of the statute of limitations was to let somebody know that he was sued in time for him to prepare a defense.

Let's look at some situations which might well arise. For instance, we now have the rule that a defendant is liable for physical harm resulting from emotional shock. In Niederman v. Brodsky, 436 Pa. 401 (1970), it was held that damages may be recovered for injuries resulting from fright and shock caused by negligence of another even though there is no contemporaneous physical impact, where the one injured was in personal danger of physical impact because of the direction of the negligent force and he actually did fear physical impact. See also Papieves v. Kelly, 437 Pa. 373 (1970). It is easy enough to say if a tortfeasor pins his screaming victim against the wall of a building, he should know he is likely to be sued. But suppose plaintiff's remarried mother's adopted child or other next of kin sees the accident and is so unnerved that he develops hypertension, sour stomach and anxiety? Who could scan the crowd and pick out such a plaintiff?

Mergers, sales, many other corporate and business developments are frequently required to await either the termination or, at least, the evaluation of outstanding claims. If the statute of limitations does not close the door on such as these, what will?

The statute in assumpsit is six years. Suppose defendant loses his credit card and does not discover the loss for a week. It will be nine days before he has notified the issuing creditor in writing. Many, many covinous purchases are made. By analogy to the rule enunciated in the majority opinion, it conceivably could be 17 years less four or five days before the unfortunate consumer is sure he has picked up all the claims arising from this episode.

Suppose, in an age when product liability is becoming more and more fashionable, that a meat packer sends a dozen pounds of emetic weiners into

the world. Surely, it is right that he should be liable to those who are sickened by his unwholesome product, but should not the ambit of this duty be discoverable within the period of limitations? Who can know what plaintiffs might have bought the tainted hotdogs? Under this rule, when will the class close?

A praecipe for a writ of summons describes defendant in the briefest way; sometimes just John Smith. Unless "instructions" are given to the sheriff, he obviously will allow the writ to lie there unserved.

It is plain from the contents of Anderson on Sheriffs, Coroners and Constables, section 97, that the sheriff is entitled to require "instructions." This is an essential step in the process. Mr. Justice Pomeroy, writing the majority opinion in Peterson v. Philadelphia Suburban Transportation Company, 435 Pa. 232 (1969), said this:

"It is basic to our whole system of the trial of lawsuits that service of process be made, and timely made . . . The fundamental and indispensable nature of the service requirement permeates the decisional and statutory law of this Commonwealth, and needs no demonstration here."

The Chief Justice said in Zarlinsky v. Laudenslager, 402 Pa. 290 (1961), that rule 1010(b) providing for the reissuance of the writ was "inadequately worded."

The higher court has said that ". . . a writ of summons may be reissued only for a period of time which, measured from the date of original issuance of the writ, or the date of a subsequent reissuance thereof, is not longer than the period of time required by the applicable statute of limitations for the bringing of the action." See Marucci v. Lippman, 406 Pa. 283 (1962).

However, the higher courts have also said in Peter-

son and other cases that the right of a plaintiff to keep an action alive until service can be made on a defendant is not absolute for any particular period of time, but has been protected from abuse by the doctrine of non pros. for unreasonable delay in prosecution.

My point is, in part, that a failure to give instructions is almost tantamount to an instruction to hold the writ. A defendant who does not know he is sued will not move for a non pros. Under the case law as it stands, the unfortunate result we reach here and the hypothetical results I have suggested, can all be attained.

I have written this concurring opinion in the hope that someone closer to the throne than I will reword the rule. Otherwise, in our zeal to hold the action open until service can be made, we will hold the door open for some plaintiffs who are not trying to make service. Hence, I concur with a rather bad taste in my mouth.